James Currin, being seized in fee of the land in question, and indebted to Young, Miller Co., in a large sum of money, on the first day (611) of December, 1772, in consideration of the said debt, and of the further sum of five shillings to him paid, conveyed the said land to Young, Miller Co., in trust, to secure the said debt, and to be sold by them for the payment thereof. That the persons constituting the firm of Young, Miller Co., were John Alston, James Young, James Morton, Alexander Grindley, Andrew Miller, William Littlejohn, and George Alston; that the said J. A., J. Y., J. M., and A. G. were, on the 4th day of July, 1776, subjects of his Britannic Majesty, and still are subjects of the King of Great Britain; that the said George Alston and Andrew Miller withdrew themselves from this State in the year 1774, and removed beyond the limits of the United States, and continued beyond the limits of the said States until after the year 1783; and that the said William Littlejohn is, and, always since the 4th day of July, 1776, has been a citizen of this State.
1st. Whether the land in question, or any part there of, vested in the State of North Carolina by the Declaration of Independence and the event of war, or by the acts of confiscation.
2d. Whether the debt stated in the record is restored to Young, Miller 
Co. by the treaty of 1783; if so, is the land, being the security for the payment of that debt, reverted in them to the uses mentioned in the deed?
3d. Whether a naked trust, on the failure of a trustee, vests in the State or in the cestui que trust.
4th. If, on failure of a trustee, a trust coupled with an interest vest in the State, and that interest is afterwards restored to the individual, will the legal title pass with it?
This case coming up from a court of law, but the counsel concerned having consented that the Court shall judge of this *Page 515 
case in the same manner as they would do in a court of equity, they are therefore of opinion that, according to the principle which prevails in court of equity, that the act of a trustee shall not prejudice the cestuique trust, who is in that court the owner of that estate; that no confiscation has been operated in the present instance. Although (612) the other trustees became disqualified, by the act of confiscation, in leaving the country, yet the competency of Littlejohn remained, and he was adequate to all the purposes for which the trust was created. Even had all the trustees become subject to the confiscation laws, yet, according to the principle established in the Moravian cause, the State would have taken the land encumbered with trust. We think that as trust estates are the mere creatures of the court of equity, and by them so molded as to obtain the ends of justice, any other construction in the present case would be irreconcilable with the general doctrine on that subject.